J. W. ROSSER, ADMINISTRATOR OF THE ESTATE OF MARTHA C. ROSSER, DECEASED v. FAYE BUCHANAN SMITH.

(Filed 11 December 1963.)

**1. Appeal and Error § 51—**

Where defendant introduces testimony, only the motion to nonsuit made at the close of all of the evidence will be considered on appeal.

**2. Trial § 21—**

In passing upon motion to nonsuit made at the close of all of the evidence, so much of defendant's evidence as may be favorable to plaintiff or which tends to explain and make clear the evidence offered by plaintiff will be considered in an addition to plaintiff's evidence, but defendant's evidence which tends to establish a different state of facts or tends to impeach plaintiff's evidence is to be disregarded.

**3. Negligence § 11—**

The law imposes upon a person *sui juris* the duty to use ordinary care to protect himself from injury, and the degree of such care should be commensurate with the danger to be avoided.

**4. Automobiles § 33—**

It is the duty of a pedestrian to look before attempting to cross a highway in a rural section and to keep a timely lookout for approaching

motor traffic in the exercise of the duty to use ordinary care for her own protection, and the law will hold her to the duty of seeing what she could and should have seen if she had exercised such care.

**5. Automobiles § 42k—    Evidence held to show contributory negligence as a matter of law on part of pedestrian.**

    Plaintiff's evidence and defendant's evidence not in conflict therewith tended to show that defendant was driving at a lawful speed on a wet highway, that plaintiff's intestate, an elderly woman, who was hard of hearing, but who was not wearing her hearing aid at the time, without lifting her half-bent head stepped onto the highway from a side road without stopping when she had a clear view of defendant's approaching vehicle and that defendant, when she first saw intestate, slackened speed and when about 500 feet from intestate applied her brakes, skidded some 56 feet and turned left in an effort to avoid hitting plaintiff, but was unable to avoid collision and traveled some three or four car lengths thereafter. Defendant's evidence also tended to show that she timely sounded her horn. *Held:* Nonsuit should be entered on the ground that plaintiff's evidence discloses contributory negligence of intestate proximately contributing to her injuries so clearly that no other reasonable conclusion can be drawn therefrom.

APPEAL by plaintiff from *Martin, S.J.,* May 1963 Civil Session of LEE.

Civil action to recover damages for wrongful death allegedly resulting from defendant's negligence.

Plaintiff in his complaint alleges in substance: His intestate, Martha C. Rosser, was a well and able-bodied woman about 64 years old. At 7:55 a.m. on 14 November 1961 she was walking across the highway in front of her house and approaching a mail box on the other side of the highway. At the same time defendant was driving her automobile in a southerly direction on the highway at an unlawful rate of speed, in a careless and reckless manner, and without due care and in a manner so as to endanger or be likely to endanger persons on the highway, and pulled it to the left of the lane of traffic she was traveling in, running it across the center of the highway and against his intestate, knocking her about forty feet and inflicting injuries upon her resulting in her death at 11:00 p.m. that night.

Defendant in her answer admits that she was driving her automobile on the highway in a southerly direction at the time complained of, and that it struck plaintiff's intestate resulting in injuries to her from which she died that night, but denies that she (defendant) was negligent in any manner in the operation of her automobile at the time. She further conditionally pleads the contributory negligence of plaintiff's intestate as a bar to recovery, which is substantially as follows: As her automobile approached the scene of the accident, plaintiff's intestate, a pedestrian, without looking for traffic upon the highway com-

menced to cross from the west to the east shoulder of the highway immediately and directly in front of her automobile, which was in plain view, and failed to heed the blowing of her horn. Whereupon, in an effort to avoid striking plaintiff's intestate, she swerved her automobile to its left, and the right front of it struck plaintiff's intestate. If defendant was negligent in any manner, which is denied, then plaintiff's intestate by her own negligence contributed proximately to her injuries resulting in death, in that: One. She failed to keep a proper lookout before entering upon and attempting to cross the highway. Two. She failed to see defendant's approaching automobile which in the exercise of ordinary care for her own safety she could and should have seen, or if she did see it, she failed to yield to it the right of way. Three. She failed to heed the sound of the horn of defendant's automobile, which warning was given in sufficient time for her to avoid being struck if she had heeded it. Four. Her hearing was impaired and she had a mechanical hearing aid, but she attempted to cross the highway without wearing it and without looking for approaching traffic, thereby failing to exercise ordinary care for her own safety.

From a judgment of compulsory nonsuit entered at the close of all the evidence, plaintiff appeals.

*Gavin, Jackson & Williams by Clawson L. Williams, Jr., for plaintiff appellant.*
*Pittman, Staton & Betts by William W. Staton for defendant appellee.*

PARKER, J.   Plaintiff's sole assignment of error is to the judgment of compulsory nonsuit.

Plaintiff's intestate was struck by defendant's automobile about 7:55 a.m. on 14 November 1961 on rural road #1415, known as the Colon road, in Lee County. This is a hard-surfaced road running generally north and south, with pavement twenty feet wide and with shoulders five feet wide on each side. At the point plaintiff's intestate was struck, the road is straight and level with clear visibility 500 to 600 feet north of this point and with clear visibility about the same distance to the south of this point. At this point the posted speed limit was 55 miles an hour. It had been raining that day and the road was wet. Plaintiff and his intestate, who was his wife, lived about 1,000 feet west of this road, and there was a mail box on the east side of the road. A lane or driveway or side road ran from this road to their home.

Plaintiff's evidence, considered in the light most favorable to him, shows the following: His sole eye witness to the collision was H. G.

Daurity, who was driving a truck in a northerly direction on the Colon road, and who testified in substance: He was traveling about 30 or 35 miles an hour. About 250 feet ahead of him he saw plaintiff's intestate coming out of a side road leading to her house, about 10 or 12 feet from the pavement of the Colon road and walking "kind of fast." She was walking partly with her head down, and she walked on out into the Colon road and started across the Colon road to a mail box. He did not notice whether she looked up or not. She went on into the Colon road without stopping. She did not look up and down the highway before she entered that he could tell. She walked right on out into the highway. At that time he saw an automobile driven by the defendant in a southerly direction on the Colon road at a speed of about 30 or 35 miles an hour about 250 feet from the woman and approaching her. Defendant's automobile pulled sharply across the Colon road to the left, struck the woman about the middle of the road, and then went probably three or four car lengths and stopped. When defendant's automobile struck Mrs. Rosser, it was going about 15 miles an hour. When Mrs. Rosser was struck she sort of hung on the front of the car until it stopped and then slid off on the road. The windows on his car were up, his windshield wipers were working. He heard no horn. There was no other traffic on the road at the time. He stopped his automobile about 150 feet from where the defendant's automobile stopped. Mrs. Rosser was carried from the scene to the Lee County Hospital where she died that night about 11:00 p.m.

R. E. Chester, a state patrolman, who went to the scene testified in substance: There were 56 feet of skid marks on the right-hand side of the road to the center of the highway, and from where these ended there were "skivered" marks 40 feet in length leading to the rear of defendant's automobile. These "skivered" marks are light, burn marks or tire marks, but he could not say for sure they were skid marks. He examined defendant's automobile at the scene. It had a slight dent in the hood and grille bar to the right of its center as you sit in the driver's seat. The skid marks came down the right-hand side of the road to the right of the center line, and as they approached the place where the driveway to the Rosser home intersected the highway, they broke sharply across to the left.

Inez Rosser, daughter-in-law of plaintiff, testified that she had the following conversation with defendant that night in the Lee County Hospital: "She told me she was riding along; she saw this woman in the road and said she thought, 'Why don't that woman get out of the road?' She said, 'I blowed my horn,' and said, 'She kept right on coming in the road.' She said, 'the next thing I knew I had hit her.' She told me she caught her on the bumper. That is all she told me."

ROSSER *v.* SMITH.

At the close of plaintiff's evidence, the court denied defendant's motion for judgment of compulsory nonsuit, and defendant then introduced evidence.

Defendant testified in substance: She was traveling south on the highway at a speed of about 40 or 45 miles an hour. When she was about 150 or 200 feet from the road leading to Mrs. Martha C. Rosser's home, she saw Mrs. Rosser on the road leading to her house ten or twelve feet from the edge of the pavement, walking towards the highway with her head kind of tilted down. She "let up" on her accelerator. When she saw Mrs. Rosser was not going to look and kept on walking, she blew her horn and applied her brakes just as Mrs. Rosser stepped on the highway. When she applied her brakes, her car skidded. Mrs. Rosser kept walking across the highway with her head down. She did not look to the right or to the left. When her car skidded, she turned to the left to try to avoid hitting Mrs. Rosser. The right hood and grille of her car struck Mrs. Rosser about two or three feet from the center line of the road and in her lane of traffic. Her car traveled about two and a half car lengths after it struck Mrs. Rosser. After Mrs. Rosser was struck, she "kind of rested up" on the hood of the car, and when it stopped, she fell off.

Defendant testified in substance on cross-examination: She could tell Mrs. Rosser was an elderly woman when she came into the road. South of the driveway leading to the Rosser house is a curve. After she got around the curve good, she could see Mrs. Rosser. "I suppose that's about 500 feet; I don't know. After I got around the curve good, I saw her, she continued to go into the road. I continued to drive down the road. When I first applied my brakes, that is where I skidded my wheels." She had slowed down to 10 or 15 miles an hour when she hit Mrs. Rosser. Mrs. Rosser was in her lane of traffic when she turned to her left in an endeavor to avoid striking her. With her brakes applied, her car skidded 56 feet before it struck Mrs. Rosser. At that time her child was down on the floorboard.

Plaintiff J. W. Rosser testified before defendant introduced any evidence that his intestate was slightly hard of hearing, that two months before her death a hearing aid was bought for her, that she did not like to wear it, that she did not have it on at the time she was struck, and that he found it afterwards at home.

At the close of all the evidence, the court allowed defendant's motion for judgment of compulsory nonsuit.

Defendant offered evidence. The only motion for judgment of compulsory nonsuit to be considered is that made at the close of all the evidence. G.S. 1-183; *Murray v. Wyatt,* 245 N.C. 123, 95 S.E. 2d 541.

Consequently, in passing on the motion plaintiff is entitled to have his evidence taken in the light most favorable to him and to the benefit of every reasonable inference to be drawn therefrom, and to have considered so much of defendant's evidence, if any, as is favorable to him or which tends to explain or make clear that which has been offered by him. However, so much of defendant's evidence as tends to establish a different state of facts or which tends to contradict or impeach plaintiff's evidence is to be disregarded. *Singletary v. Nixon,* 239 N.C. 634, 80 S.E. 2d 676; *Atkins v. Transportation Co.,* 224 N.C. 688, 32 S.E. 2d 209.

Mrs. Rosser was struck at a place on the highway where the posted speed limit was 55 miles an hour. The evidence of the greatest speed of defendant's automobile at the time comes from defendant, to wit, 40 or 45 miles an hour. The only other motor vehicle in sight at the time was that driven by H. G. Daurity, which was approaching defendant and was several hundred feet away. The time was 7:55 a.m. There is no evidence of fog or of anything to obstruct the view. There is no evidence in the record that defendant under the circumstances was operating her automobile at an excessive or unlawful rate of speed, or that she was driving it in a reckless and careless manner.

Defendant's evidence on direct examination is that when she was 150 or 200 feet from the road leading to Mrs. Rosser's home, she saw Mrs. Rosser on the road leading to her house ten or twelve feet from the edge of the pavement, walking toward the highway with her head kind of tilted down, and she "let up" on her accelerator. On cross-examination she testified she could tell Mrs. Rosser was an elderly woman when she came into the road. After she got around the curve good, she could see Mrs. Rosser. "I suppose that's about 500 feet; I don't know." The testimony of H. G. Daurity, witness for plaintiff, is that he saw plaintiff's intestate coming out of a side road leading to her house, about ten or twelve feet from the pavement of the Colon road and walking "kind of fast." She was walking partly with her head down, and she walked on out into the Colon road and started across the Colon road to a mail box. She did not look up and down the highway before she entered that he could tell. Plaintiff's witness, Inez Rosser, testified defendant told her that night at the Lee County Memorial Hospital she saw this woman in the road, that she blew her horn, that she kept on coming in the road, and the next thing she knew she hit her. From the place where Mrs. Rosser was struck, skid marks lead south for 56 feet, which permits a reasonable inference that defendant applied her brakes when she was that distance from Mrs. Rosser.

It was the duty of defendant both at common law and under the express provisions of G.S. 20-174(e) to "exercise due care to avoid colliding" with Mrs. Rosser on the highway. *Landini v. Steelman,* 243 N.C. 146, 90 S.E. 2d 377. Even if we concede that plaintiff's evidence, and defendant's evidence favorable to him, would permit a jury to find that defendant failed to exercise due care to avoid striking Mrs. Rosser after she saw her, it is manifest that plaintiff's own evidence so clearly shows negligence on the part of his intestate, which proximately contributed to her injuries and death, that no other conclusion can be reasonably drawn therefrom.

The law imposes upon a person *sui juris* the duty to use ordinary care to protect himself from injury, and the degree of such care should be commensurate with the danger to be avoided. *Holland v. Malpass,* 255 N.C. 395, 121 S.E. 2d 576; *Alford v. Washington,* 244 N.C. 132, 92 S.E. 2d 788; 65 C. J. S., Negligence, sec. 116, p. 706. It was the duty of Mrs. Rosser to look before she started across the highway. *Goodson v. Williams,* 237 N.C. 291, 296, 74 S.E. 2d 762, 766. It was also her duty in the exercise of reasonable care for her own safety to keep a timely lookout for approaching motor traffic on the highway to see what she should have seen and could have seen if she had looked before she started across the highway. *Garmon v. Thomas,* 241 N.C. 412, 416, 85 S.E. 2d 589, 592.

Plaintiff's own evidence shows that his intestate about 64 years old was slightly hard of hearing, that a hearing aid had been bought for her, and that she was not wearing it when she walked onto the highway and was struck by defendant's automobile. That defendant's automobile was near his intestate and approaching on the highway and was plainly visible, if she had looked at the time she walked onto the wet road and was walking across it. In addition, his evidence is that she walked onto the highway and was crossing it with her head partly down and without looking at all up and down the highway. "There are none so blind as those who have eyes and will not see." *Baker v. R. R.,* 205 N.C. 329, 171 S.E. 342. In brief, his evidence shows that his intestate exercised no care at all for her own safety in walking onto and crossing the highway in front of defendant's approaching automobile. Plaintiff has proved himself out of court and the trial court properly nonsuited him. *Lincoln v. R. R.,* 207 N.C. 787, 178 S.E. 601.

Affirmed.