THOMAS E. BLACKWELL v. HENRY T. BUTTS, Guardian Ad Litem of LARRY WAYNE BUTTS

No. 7117SC1

(Filed 3 February 1971)

1. Appeal and Error § 57— findings of fact — nonjury trial — appellate review

The findings of fact by the trial court in a nonjury trial are conclusive if supported by any competent evidence, and a judgment supported by such findings will be affirmed.

2. Automobiles § 18— entering highway from private driveway — right of way

A motorist preparing to enter a public highway from a private driveway has the duty to yield the right of way to all vehicles approaching on the public highway. G.S. 20-156(a).

3. Automobiles § 18— entering highway from private driveway — exercise of due care

The fact that a motorist emerging from a private driveway stopped before entering the highway does not relieve the motorist from further responsibility with respect to the exercise of due care.

4. Automobiles § 18— entering highway from private driveway — curve in road — duty of motorist to maintain constant lookout

A motorist who was emerging from a private driveway could not see more than 200 feet to her right because of a sharp curve in the highway. The motorist looked first to the left and then to the right, and, without further looking to the right, the motorist drove diagonally across the highway to the westbound lane where the motorist was struck by defendant's automobile that was coming around the curve in the westbound lane. *Held:* The mere fact that the motorist reached the westbound lane a second or two before being struck by defendant's automobile did not give her the right of way, and the motorist had the duty to look again to the right prior to entering the westbound traffic lane.

Judge BRITT dissenting.

APPEAL by defendant from *Long, Superior Court Judge,* April 1970 Civil Session of ROCKINGHAM County Superior Court.

Plaintiff instituted this action December 14, 1967 in the Reidsville Recorder's Court, to recover for damages to an automobile which was being driven by his wife, Betty Mimms Blackwell, and which was damaged in a collision with an automobile being driven by the defendant Larry Wayne Butts on 23 June 1967. The defendant filed a counterclaim for damages to his automobile. From a judgment in the Recorder's Court denying recovery to either party, an appeal was taken to the Superior Court where it was heard without a jury.

The trial judge in the Superior Court found as a fact (summarized except where quoted, with changes made in the directions as the parties stipulated that the road in the vicinity of the accident ran in an east-west direction rather than a north-south direction) that the collision occurred on June 23, 1967, at approximately 2:50 p.m. on North Carolina Highway 150. The highway was paved to a width of 22 feet for two lanes of travel. The roadway was dry and the weather was clear. Plaintiff's vehicle was a 1965 Ford Mustang, and the defendant's vehicle was a 1959 Chevrolet automobile. Immediately preceding the accident, plaintiff's Mustang was parked in a private drive on the south side of the highway preparing to enter the highway. Approximately 200 feet east of the driveway, the highway curved sharply towards the south.

"4. That while the plaintiff's wife was stopped preparing to enter N. C. Highway 150, she looked both to the [west] and then to the [east] and, ascertaining that there were not approaching vehicles to be seen, she started off in first gear, then made a left turn onto the highway, proceeding in the [westbound] lane, and thereafter shifted into second gear and obtained a speed of approximately 20 miles per hour in a [westerly] direction down N. C. Highway 150;

5. That, at or about the same time that the plaintiff's motor vehicle entered N. C. Highway #150 from a private drive, the defendant's motor vehicle operated by the defendant Larry Wayne Butts rounded the sharp curve in N. C.

Highway #150 and thereafter proceeded [west] in the [west] lane of travel and crashed into the rear of the plaintiff's vehicle and knocked the plaintiff's vehicle down the roadway and into a ditch along the [north] side of said highway causing the plaintiff's motor vehicle to overturn and the damages as alleged in the Complaint;

6. That the sole proximate cause of the collision complained of and the damages to the plaintiff's automobile was the negligence of the defendant in failing to keep a proper lookout and in failing to keep his Chevrolet automobile under proper control; and, further, the Court finds that the plaintiff is entitled to a Judgment for the damages to the plaintiff's automobile."

The trial judge then proceeded to answer issues of negligence, contributory negligence and damages in favor of the plaintiff and awarded $1,360.00.

The defendant excepted to Finding of Fact No. 6 for that it was not supported by the evidence and also assigned as error the signing and entry of the judgment.

*Bethea, Robinson and Moore by Norwood E. Robinson for defendant appellant.*

*McMichael, Griffin and Post by Albert J. Post and W. Edward Deaton for plaintiff appellee.*

CAMPBELL, Judge.

[1] A jury trial having been waived, the findings of fact by the trial court are conclusive if supported by any competent evidence and a judgment supported by such findings will be affirmed. *Piping, Inc. v. Indemnity Co.,* 9 N.C. App. 561, 176 S.E. 2d 835 (1970).

"Generally, in tort actions involving issues of negligence . . . the law casts upon the plaintiff the burden of showing the defendant's negligence. . . . " *Jernigan v. R. R. Co.,* 275 N.C. 277, 167 S.E. 2d 269 (1969).

The record shows that the collision occurred in a 55 mile per hour zone.

The driver of plaintiff's automobile testified:

" . . . I left my mother's and I came out to the highway and I stopped as I got to the edge of the highway. I looked to my left and then to my right and did not see anything coming, so I went out in the highway, and I guess I had gone about 50 feet, I reckon, and I was hit from the back. . . . When the accident occurred, I had just shifted to second. I was just pulling out and I had shifted to second. I was going about 15 to 20 miles per hour and I had gotten on my side of the road, the right side.

. . . I did not see the defendant's motor vehicle before the accident, nor did I hear anything before the accident. I did not hear a horn blow, nor did I hear tires squeal. I was on my right side of the highway and I was fully in my lane of traffic. . . . The left rear of my automobile was struck by the defendant's car and the right front of the Butts' automobile was damaged. When I pulled up to the edge of Highway 150, and looking to the east, I guess I could see about 200 feet and it was pretty clear looking to the west. The roadway looking to the east from where I was stopped in the driveway at the edge of the highway there is a curve. I guess the curve is about 200 feet from the driveway, but I am not sure.

Q. Can you see much behind the curve?

A. Not unless you get into the highway; not much further, I don't think.

I stopped in the driveway before I pulled onto the highway. I looked both ways; I looked to my left, then to my right, and then I proceeded out into the highway. I had shifted to second as I have said when I was struck from behind. I never did see the Butts' vehicle before the accident. . . .

. . . The road was clear and dry and I had planned to go in a westerly direction. I pulled up to the road and stopped, and I looked first to my left and did not see anything coming. There was nothing to obstruct my view to my left. I looked to my right and to the best of my knowledge there was approximately 200 feet to my right that I could see unobstructedly. I looked to my right approximately 200 feet and did not see anything at all. I then

pulled out into the road. I usually pull into the road at an angle, but I do not remember exactly what I did on this particular day. I had a three-year-old boy in the front seat with me. I believe he was sitting. When I pulled up to the highway and saw nothing to the right, I did not look back to my left. I last looked to my right. When I looked to my right, I just pulled on out because there was nothing coming and there was a clear view to my left. I last looked to my right just before I pulled out. . . . The front bumper of my automobile was at the edge of the paved portion of the road when I stopped before entering the highway. I then pulled out after I had looked to my right because I saw nothing.

Q. Then, you were not looking back to your right after you started out, were you?

A. No."

There was no other witness for the plaintiff. The defendant testified:

"I was traveling between 50 and 55 miles per hour in a westerly direction on Highway 150. As I traveled westerly and before the accident, I did see an automobile at the end of the driveway. . . . The plaintiff's car was stopped there. The bumper of the car was about even with the pavement. I was traveling on my right side of the road, that is the north side of the road. It was about 300 feet from my automobile to the plaintiff's automobile when I first saw her stopped on the side of the highway. When I first saw her, I did not reduce the speed of my vehicle at that time, but about the time I saw her, she started to pull out and I blew my horn and applied my brakes. I put my foot on the brakes to break the speed but not enough to slide.

After I blew my horn, the car kept coming out in the highway. I kept on blowing my horn and I was pretty close to her and I saw this little boy sitting there in the right front seat and I swerved to the left trying to miss her. When I swerved to the left, the right front of my automobile struck her left rear. My car slid a little ways after the collision and stopped and I got out. Her car went over in the man's yard and turned over. . . .

. . . I was really close to the Blackwell car when I first saw the child. I was about 300 feet from the Blackwell car when I first saw it. When I first saw it it was stopped, and I went on, and she pulled out. When I first saw it, she was stopped, and she pulled out and then I blew the horn. . . .

\* \* \*

After my car hit the Blackwell car, it stopped up the road a little ways, but I don't know how many feet; I don't believe it was quite 50 feet. I will make a mark on the blackboard where I was when I blew my horn; it was right along here when I saw her, and I reckon right here when she started out. I blew my horn and I put my brakes on here when I saw that she was coming on out. I do not know how fast my car was traveling when I hit the Blackwell car, I was trying to get away from that little boy. There was not any traffic coming from the other direction. My car was not completely in the west lane of traffic. She was in the middle of the road in an angle. I will make a mark showing what type of an angle that she came into the road. It was like that, and I came in here like that. This is my car and this is her car. She was coming out of the driveway and I was coming up here like that."

[2-4] The driver of the plaintiff's automobile, before entering the public highway from a private driveway, had the duty to yield the right of way to all vehicles approaching on the public highway. G.S. 20-156(a). The fact that the driver of plaintiff's automobile emerging from the private driveway stopped before entering the highway, did not relieve her from further responsibility with respect to the exercise of due care. 60A C.J.S., Motor Vehicles, § 345. She knew that she could not see to her right, that is, to the east more than 200 feet because of the sharp curve to her right. Due care imposed the further duty to proceed with great caution out into the highway before leaving a position of safety. It was also incumbent upon her to look again to her right when she would then have a greater view around the curve before she entered the traffic lane for westbound traffic. It was westbound traffic which would be coming around the curve. It is obvious from her testimony quoted above that she could have seen around the curve further if she had gotten out into the eastbound traffic

Blackwell v. Butts

lane. The eastbound lane was unobstructed both as to vehicles and view.

If she had then looked, she would have seen the defendant's vehicle in time to let it pass. Instead, she never looked again to the right but proceeded going to the left at an angle and into the westbound traffic lane. The mere fact that the plaintiff's driver got into the westbound lane a split second or two before being struck by the defendant's vehicle did not give her the right of way. *Moore v. Butler,* 10 N.C. App. 120, 178 S.E. 2d 35 (1970).

The factual situation in this case is quite similar to the facts in *Garner v. Pittman,* 237 N.C. 328, 75 S.E. 2d 111 (1953), except that in this case the driver of the plaintiff's vehicle succeeded in getting into the highway a little bit further than in the *Garner* case, and instead of being struck in the side, was struck on the left rear corner by the defendant as he was maneuvering to avoid the sudden entrance of the plaintiff's vehicle into the highway immediately in front of him. The defendant had the right of way until it was occluded by the negligent movement of the driver of the plaintiff's automobile. *Warren v. Lewis,* 273 N.C. 457, 160 S.E. 2d 305 (1968).

The fact that the driver of plaintiff's automobile succeeded in getting across the highway and into the westbound traffic lane a split second before being struck by defendant's vehicle does not make applicable the rules with regard to following too closely and rear-end collisions. These rules only apply where one vehicle has been in front of another vehicle for a sufficient length of time to enable the following driver, in the exercise of due care, to be conscious of the vehicle in front, which was not the situation here involved. 60A C.J.S., Motor Vehicles § 323.

The evidence in this case does not support the finding of the trial judge "[t]hat the sole proximate cause of the collision complained of and the damages to the plaintiff's automobile was the negligence of the defendant in failing to keep a proper lookout and in failing to keep his Chevrolet automobile under proper control." Under the evidence taken in the light most favorable to the plaintiff, the plaintiff failed to establish his right to a recovery.

Blackwell v. Butts

The judgment of the Superior Court appealed from is

Reversed.

Judge HEDRICK concurs.

Judge BRITT dissents.

Judge BRITT dissenting:

The majority opinion correctly states that where jury trial is waived, the findings of fact by the trial court are conclusive if supported by any competent evidence and a judgment supported by such findings will be affirmed. *Piping, Inc. v. Indemnity Co.*, 9 N.C. App. 561. In my opinion the findings of fact are supported by competent evidence and support the judgment appealed from.

Crucial findings of fact are numbered 4, 5, and 6 and are set forth in the majority opinion. No exception was noted to 4 and 5, therefore, we can assume that defendant concedes they are supported by competent evidence. 1 Strong, N. C. Index 2d, Appeal and Error, § 28, pp. 157-162. Findings 4 and 5 establish that before entering the highway, plaintiff's wife stopped, looked to her left and her right and "ascertaining that there were no approaching vehicles to be seen, she started off in first gear, then made a left turn onto the highway, proceeding in the (westbound) lane, and thereafter shifted into second gear and obtained a speed of approximately 20 miles per hour in a (westerly) direction down N. C. Highway 150"; thereafter defendant, who had come around a sharp curve some 200 feet east of the point where plaintiff's wife entered the highway, crashed into the rear of plaintiff's vehicle. Plaintiff's wife testified that the front bumper of her car was at the edge of the paved portion of the highway when she stopped; that she had traveled about 50 feet and was in the westbound lane when struck; that the paved portion of the road was 22 feet wide and she looked to her right immediately before driving onto the pavement.

A portion of defendant's testimony is set forth in the majority opinion. If the court had accepted defendant's version of the occurrence, a judgment in favor of defendant could be fully supported, but the court elected to accept plaintiff's version.

Evidently, the Court was influenced by defendant's testimony on cross-examination disclosing that although he was only 19 at the time of the collision he had theretofore had "other traffic violations," one for reckless driving and "about" three for speeding and driving on wrong side of road; he had lost his license once and had been involved in three or four accidents.

In my opinion the trial court's determination that the sole proximate cause of the collision was the negligence of the defendant in failing to keep his Chevrolet under proper control and failing to keep a proper lookout is fully supported by the evidence. I vote to affirm the judgment of the Superior Court.