PETROLEUM TANK SERVICE, INC. v. MELVIN FORTNER, d/b/a DELTA MAINTENANCE CO.

No. 7126SC167

(Filed 28 April 1971)

1. Appeal and Error § 57—nonjury trial—review of findings and judgment

Where a jury trial is waived, the court's findings of fact are conclusive if supported by any competent evidence, even though there is evidence *contra,* and a judgment supported by such findings will be affirmed.

2. Money Received § 3—indebtedness for advancements made—testimony by auditor

Trial court's finding that defendant was indebted to plaintiff for advances made was supported by the testimony of an auditor selected by the referee to audit plaintiff's books.

**3. Evidence § 33— hearsay evidence — failure to object**

Hearsay evidence admitted without objection may be considered with the other evidence and given any evidentiary value which it may possess.

APPEAL by defendant from *Martin, Superior Court Judge,* 14 September 1970, Schedule A, Civil Session of MECKLENBURG County Superior Court.

Plaintiff instituted this action to recover amounts allegedly due under an agreement whereby defendant was to obtain contracts for plaintiff to paint towers. Plaintiff alleged that the profits or losses from the contracts would be shared seventy-five percent (75%) by plaintiff and twenty-five percent (25%) by defendant; that defendant did obtain contracts; that the contracts for those jobs have been completed at a loss and defendant's share of that loss comes to $3,363.95; and that plaintiff, at the request of defendant, advanced defendant the sum of $5,151.00 with the understanding that said sum would be paid back out of the profits, if any; otherwise, defendant would reimburse plaintiff for the advances.

Defendant admitted the existence of the agreement with plaintiff for the procuring of contracts to paint towers but denied that he was liable for any of the losses arising out of such contracts. Defendant also denied being indebted to plaintiff on any advances made by plaintiff to defendant. By way of counterclaim, defendant alleged that plaintiff had, in fact, made a profit on the various contracts and that, as his share, defendant is entitled to the sum of $28,077.08. Defendant further alleged that he is entitled to the sum of $15,000.00 as the amount that he lost when the plaintiff arbitrarily reduced one contract by $60,000.00.

The court, of its own motion, referred the matter to a referee to hear evidence and report his findings of fact and conclusions of law. Based on the final report of the referee and the evidence presented at the hearing conducted by the referee, the court found as a fact:

"14)  That the plaintiff and the defendant agreed to procure and perform contracts to paint towers being constructed in Greenville, North Carolina, and in Cutler, Maine.

15)    It was a part of the agreement between the plaintiff and the defendant that the plaintiff would receive seventy-five percent (75%) of the profits and the defendant would receive twenty-five percent (25%) of the profits from such contracts.

16)    The total contract price, including change orders, for the job in Cutler, Maine, was Two Hundred Twenty-Two Thousand Three Hundred Thirty Dollars ($222,330.00).

17)    The total contract price, including change orders, for the job in Greenville, North Carolina, was Twenty-Six Thousand Nine Hundred Seventy-One Dollars ($26,971.00).

18)    According to the testimony of the defendant, the job overhead factor to be used in computing plaintiff's profit and loss on each job was ten percent (10%).

19)    According to the testimony of the auditor, the plaintiff's actual job overhead factor for computing profit and loss was between twenty-four percent (24%) and twenty-six percent (26%).

20)    On the basis of a ten percent (10%) overhead factor there would have been a profit on the Greenville, North Carolina, job of Four Thousand One Hundred Twenty-One Dollars and Fifty-Three Cents ($4,121.53), one-fourth (1/4) of which, or One Thousand Thirty Dollars and Thirty-Eight Cents ($1,030.38), would be due the defendant.

21)    On the basis of a ten percent (10%) overhead factor there would have been a profit on the Cutler, Maine, Job of Ten Thousand Two Hundred Seven Dollars and Sixty-Six Cents ($10,207.66), one-fourth (1/4) of which, or Two Thousand Five Hundred Fifty-One Dollars and Ninety-Two Cents ($2,551.92) would be due the defendant.

22)    During the period from March 10, 1967 through June 9, 1967, the plaintiff advanced to the defendant the sum of Five Thousand One Hundred Fifty-One Dollars ($5,151.00)."

The judgment recited that the defendant had waived his right to a jury trial, and that plaintiff had filed a waiver for the purposes of the proceeding, of any judgment in excess of One Thousand Five Hundred Sixty-Eight Dollars and Seventy-Cents

($1,568.70), that being the amount which would be due plaintiff after first deducting from the advances of Five Thousand One Hundred Fifty-One Dollars ($5,151.00) defendant's share of profits if computed on the basis of a ten percent (10%) overhead factor. The court then concluded as a matter of law that there was no evidence to support the contention of plaintiff that defendant is liable for twenty-five percent (25%) of losses, if any, on either of the subject jobs; and that defendant is indebted to plaintiff in the amount of $1,568.70 for monies advanced. Judgment was entered in favor of plaintiff in the amount of $1,568.70.

From the judgment in favor of plaintiff, defendant appeals to this Court.

*Sanders, Walker & London by Arnold M. Stone for plaintiff appellee.*

*B. Kermit Caldwell for defendant appellant.*

CAMPBELL, Judge.

[1]  The defendant was not represented by counsel before the referee. Defendant's first assignment of error is directed at the finding of the trial judge that the defendant was indebted to the plaintiff in the amount of $5,151.00 for advances made from 10 March 1967 to 9 June 1967. Where a jury trial is waived, the court's findings of fact are conclusive if supported by any competent evidence, even though there is evidence *contra,* and a judgment supported by such findings will be affirmed. *Piping, Inc. v. Indemnity Co.,* 9 N.C. App. 561, 176 S.E. 2d 835 (1970); *Goldman v. Parkland,* 7 N.C. App. 400, 173 S.E. 2d 15 (1970).

[2, 3]  We are of the opinion that the testimony given by J. T. Hendrix, the auditor selected by the referee to audit the books of the plaintiff, provides sufficient evidence to sustain the findings of fact. This testimony, in part, is as follows (as summarized in the record):

> "Mr. Hendrix then traced the contract amounts into the Petroleum Tank Service cash journal and found them to be in agreement with the contract figures stated. For the payroll, Hendrix added all payroll sheets for both jobs and cross-checked them and traced these amounts to disbursements.

Tank Service v. Fortner

* * *

Hendrix also made an audit with regard to advances made to Mr. Fortner by Petroleum Tank Service and substantiated $5,150.00 in disbursements to Mr. Fortner, all endorsed by Mr. Fortner in the period of March, 1967, through June, 1967. Included in this amount was a check for $376.00 which was actually disbursed in September of 1967. These checks were not entered as salary. All the checks were for round figures, $100, $400, $300, except for the $376.00 check, previously mentioned.

During the subject period Mr. Fortner was receiving approximately $225.00 per week in gross salary which salary was included in the audit as an expense item, $900.00 having been entered on the Greenville, North Carolina, job. There was $450.00 entered on the Cutler, Maine, Job and eight weeks of salary paid by Midwest Construction Company.

* * *

There was nothing in the books and records to indicate that any of the sums paid to Fortner went to any other employee on any other job or to reimburse any travel expenses Fortner had while soliciting work for this company.

With respect to the questions asked of me by Mr. Fortner about whether some of the checks about which I have testified had been for the purpose of reimbursement, I would like to say that I went to these checks which were claimed as advances. Now there were, I know at that time other checks which were written to Mr. Fortner which I did not vouch and which had been entered, I recall from memory, as reimbursement for expenses. As I stated before I was told only to go along the line and validate the $5,150.00 which I did, but this does not mean that these were the only checks written to Mr. Fortner during the period involved.

* * *

. . . I also have on there that the checks were written for Melvin Fortner and the checks were signed. I did not find that any portion of this was advances to employees. . . . "

At one point during the hearing, in referring to the checks written to Mr. Fortner, Mr. Hendrix stated that " . . . These checks were claimed by Petroleum Tank Service, whose records he went over, to be advances to Mr. Fortner . . . . " While this testimony is hearsay, no objection was made to its admission, thus it may be considered with the other evidence and given any evidentiary value which it may possess. *State v. Fuqua*, 234 N.C. 168, 66 S.E. 2d 667 (1951) ; *Lambros v. Zrakas*, 234 N.C. 287, 66 S.E. 2d 895 (1951).

Defendant's only other assignment of error is also directed at portions of the trial judge's findings of fact. We have examined the record and are of the opinion that the evidence is sufficient to support all of the findings of fact and that the findings of fact support the conclusions of law.

Affirmed.

Judges BRITT and GRAHAM concur.